## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ERIKA OLINGER, | Case No. |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT AND JURY DEMAND** |
| ALLERGAN, INC. f/k/a INAMED CORPORATION, ALLERGAN USA, INC., and ALLERGAN plc., | |
| Defendants. | |

### CLASS ACTION COMPLAINT

Plaintiff Erika Olinger ("Plaintiff"), brings this action against Defendants Allergan, Inc., Allergan USA, Inc., and Allergan plc (hereinafter collectively "Allergan") on behalf of herself and all others similarly situated. Allergan manufactures and sells BIOCELL saline-filled and silicone-filled breast implants and tissue expanders ("BIOCELL" or "BIOCELL textured implants"). On July 24, 2019, Allergan announced a worldwide recall of BIOCELL after the U.S. Food and Drug Administration ("FDA") called for the action following new information that Allergan's BIOCELL implants were tied to cases of breast implant-associated anaplastic large cell lymphoma ("BIA-ALCL") not seen with other textured implants.

## PARTIES

1.      Plaintiff is a citizen and resident of Orleans Parish, Louisiana.

2.      Defendant Allergan plc is a corporation with its headquarters in Dublin, Ireland. Defendant Allergan plc's principal place of business is located at: 5 Giralda Farms, Dodge Dr., Madison, New Jersey 07940.

3.      Defendant Allergan, Inc., formerly known as Inamed Corporation and prior to that, McGhan Medical Corporation, is a wholly owned subsidiary of Allergan plc. Defendant Allergan, Inc., is incorporated under the laws of Delaware and has its principal place of business located at: 5 Giralda Farms, Dodge Dr., Madison, New Jersey 07940.[1]

4.      Defendant Allergan USA, Inc., is a wholly owned subsidiary of Allergan plc. Defendant Allergan USA, Inc., is incorporated under the laws of Delaware and has its principal place of business located at: 5 Giralda Farms, Dodge Dr., Madison, New Jersey 07940.

5.      At all relevant times, each Defendant acted as the agent and alter ego of the other.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act, because: (1) the Class has at least 100 members; (2) the combined claims of the Class exceeds $5,000,000.00, exclusive of interests, attorneys' fees, and costs; and (3) Plaintiff and some members of the Class are citizens of states different than Allergan.

7.      This Court has specific personal jurisdiction over Allergan because Allergan conducts substantial business in Louisiana and within this District. Allergan has sufficient

---

[1] In March 2006, Allergen acquired Inamed and its wholly owned subsidiary McGhan for approximately $3.2 billion.  During this acquisition, Allergen also acquired the BIOCELL trademark and assumed the risks associated with these products.

minimum contacts with Louisiana and intentionally avails itself of the consumers and markets within Louisiana through the promotion and sale of the BIOCELL textured breast implants. Plaintiff's breast implant surgery using the BIOCELL textured implants manufactured by Allergan occurred in Louisiana.

8.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to these claims occurred in this venue.

## FACTUAL ALLEGATIONS

### Background

9.    Breast implants are medical devices that are implanted under the breast tissue to increase breast size or replace breast tissue that has been removed. Tissue expanders are a type of inflatable breast implant which stretches skin and muscle to make room for a permanent implant in the future. Tissue expanders are often used in breast reconstruction surgeries.

10.    Breast implants were first introduced in the 1960s. In 1976, Congress passed the Medical Device Amendment to the Federal Food, Drug and Cosmetic Act which allowed the FDA to review and approve new medical devices, including breast implants.

11.    The FDA uses a three-tiered organizational system to classify medical devices, Class I, II, and III, based on the device's safety risks. Generally, the greater the safety risk, the greater the regulatory control asserted by the FDA and the higher the class listing. A Class I medical device has low to moderate risk to the user. Examples of Class I devices are elastic bandages, stethoscopes, and bedpans. A Class II medical device has a moderate to high risk to the user. Examples of a Class II medical device include electric powered wheelchairs and pregnancy test kits. A Class III medical device has a high risk to the patient or user. Examples of Class III devices are pacemakers and breast implants.

12.     Class III medical devices are considered, by the FDA, to create the greatest risk to human safety and necessitate the need for special controls. One of these special controls is the requirement to obtain premarket approval under 21 U.S.C. § 360 before marketing the device to the public. The premarket approval process allows the FDA to engage in scientific evaluations to determine if a Class III device is safe and effective.

13.     In January 2011, the FDA identified a link between breast implants and BIA-ALCL. BIA-ALCL is a type of non-Hodgkin's lymphoma, a cancer of the immune system. BIA-ALCL is not breast cancer, although in most cases, BI-ALCL is found in the scar tissue and fluid near the breast implant. In some cases, the cancer will spread throughout the body to other systems.

14.     The main symptoms of BIA-ALCL are persistent swelling or enlargement of a patient's breast or surrounding tissue that develops a year or more after breast implant surgery, lumps in the breast or armpit, pain, rash, redness, hardening of the breast, or changes in the shape or size of the breast.

15.     BIA-ALCL is a serious cancer and can be fatal, especially if not diagnosed early or promptly treated.

16.     BIA-ALCL can be treated by surgically removing the implant and surrounding scar tissue. Some patients may also require chemotherapy and radiation treatments.

17.     The symptoms of BIA-ALCL may occur years after the implant placement.

18.     The diagnostic testing recommended to determine if BIA-ALCL is present is invasive.

**The Product**

19.     On July 24, 2019, the FDA issued a worldwide Class I Recall of BIOCELL textured implants. A Class I Recall is the most series type of recall and indicated that use of the recalled

4

product may cause serious injury or death. The FDA issued this recall because the BIOCELL implants were tied to a large majority of cases of BIA-ALCL. The risk of developing BIA-ALCL is greatly increased if the patient has textured implants. The FDA announced the risk of BIA-ALCL in women with textured implants ranges from 1:3,817 and 1:30,000.

20.     The FDA determined the risk of developing BIA-ALCL was six times higher with Allergan's BIOCELL textured implants when compared with textured implants from other manufacturers.

21.     On July 24, 2019, in its recall statement, the FDA stated there are 573 cases of BIA-ALCL worldwide. Of those 573 cases, 33 people have died as a result of BIA-ALCL. This is a "significant increase" since the FDA's last update earlier in 2019 which found there were 116 new cases of BIA-ALCL and 24 deaths. Of the 573 individuals with BIA-ALCL, 481, or 83.9%, had Allergan's BIOCELL implants. Of the 33 deaths caused by BIA-ALCL, 12 of the 13 patients where the implant manufacturer was known had Allergan's BIOCELL textured implants.

22.     The products affected by the FDA's recall are as follows:

- **Style Allergan Natrelle Saline-Filled Breast Implants** (formerly McGhan RTV Saline-Filled Mammary Implant). The following are the textured styles:

    o  Style 163 – BIOCELL Textured Shaped Full Height, Full Projection Saline Breast Implants

    o  Style 168 – BIOCELL Textured Round Moderate Profile Saline Breast Implants, also referred to as 168MP (168 Moderate Profile)

    o  Style 363 – BIOCELL Textured Shaped Moderate Height, Full Projection Saline Breast Implants, Allergan catalog includes 363LF, or 363 Low Height Full Projection

    o  Style 468 – BIOCELL Textured Shaped Full Height Moderate Projection Saline Breast Implants

- **Allergan Natrelle Silicone-Filled Textured Breast Implants** (formerly Inamed Silicone-Filled Breast Implants). The following are the textured styles:

- o Style 110 – BIOCELL Textured Round Moderate Projection Gel Filled Breast Implants
- o Style 115 – BIOCELL Textured Round Midrange Projection Gel Filled Breast Implants
- o Style 120 - BIOCELL Textured Round High Projection Gel Filled Breast Implants
- o Style TRL - Natrelle Inspira BIOCELL Textured Responsive Silicone-Filled Breast Implants
- o Style TRLP - Natrelle Inspira BIOCELL Textured Responsive Silicone-Filled Breast Implants
- o Style TRM - Natrelle Inspira BIOCELL Textured Responsive Silicone-Filled Breast Implants
- o Style TRF - Natrelle Inspira BIOCELL Textured Responsive Silicone-Filled Breast Implants
- o Style TRX - Natrelle Inspira BIOCELL Textured Responsive Silicone-Filled Breast Implants
- o Style TCL – Natrelle Inspira BIOCELL Textured Cohesive Silicone-Filled Breast Implants
- o Style TCLP – Natrelle Inspira BIOCELL Textured Cohesive Silicone-Filled Breast Implants
- o Style TCM – Natrelle Inspira BIOCELL Textured Cohesive Silicone-Filled Breast Implants
- o Style TCF – Natrelle Inspira BIOCELL Textured Cohesive Silicone-Filled Breast Implants
- o Style TCX – Natrelle Inspira BIOCELL Textured Cohesive Silicone-Filled Breast Implants
- o Style TSL – Natrelle BIOCELL Textured Soft Touch Silicone-Filled Breast Implants
- o Style TSLP – Natrelle BIOCELL Textured Soft Touch Silicone-Filled Breast Implants
- o Style TSM – Natrelle BIOCELL Textured Soft Touch Silicone-Filled Breast Implants
- o Style TSF – Natrelle BIOCELL Textured Soft Touch Silicone-Filled Breast Implants
- o Style TSX – Natrelle BIOCELL Textured Soft Touch Silicone-Filled Breast Implants
- **Natrelle 410 Highly Cohesive Anatomically Shaped Silicone Filled Breast Implants**. The following are the textured styles:
  - o Style 410FM

6

- o   Style 410FF
- o   Style 410MM
- o   Style 410 MF
- o   Style 410 FL
- o   Style 410 ML
- o   Style 410 LL
- o   Style 410 LM
- o   Style 410 LF
- o   Style 410 FX
- o   Style 410 MX
- o   Style 410 LX
- Allergan tissue expanders that have BIOCELL texturing originally cleared as:
  - o   Natrelle 133 Plus Tissue Expander (K143354)
  - o   Natrelle 133 Tissue Expander with Suture Tabs (K102806).

23.     Prior to the FDA's recall on July 24, 2019, numerous studies documented the risk of developing BIA-ALCL in association with BIOCELL textured breast implants. The American Society of Plastic Surgeons estimates that the current risk of BIA-ALCL for women with textured implants ranges from 1:2,207 and 1:86,029. In March 2015, the French National Cancer Institute claimed "[t]here is a clearly established link between the occurrence of this disease and the presence of a breast implant." On March 21, 2017, the FDA updated its 2011 warning and stated "[t]he risk of BIA-ALCL is higher for textured surface implants versus smooth surface implants."

24.     In December 2018, Allergan's BIOCELL textured implants lost their European certification and were suspended from the European and Brazilian markets. Allergan textured implants were banned in France in April 2019. Allergan's BIOCELL textured implants were banned in Canada in May 2019.

**The Warranty**

25.     On July 24, 2019, Allergan announced that BIOCELL textured breast implants would no longer be sold or distributed in any market.

26.     On July 30, 2019, Allergan announced it has created a BIOCELL Replacement Warranty for all customers that currently have BIOCELL textured implants ("the Warranty"). The Warranty provides that Allergan will provide Allergan smooth implants to replace the BIOCELL textured implants. However, Allergan will not provide any surgical fee assistance or reimbursement for the surgery to remove the BIOCELL textured implants and replace them with Allergan smooth implants. The Warranty will run for 24 months, until July 24, 2021, and will apply only to revision surgeries on or after the date of the FDA's recall, July 24, 2019.

27.     The Warranty is insufficient because it does not provide for surgical fee assistance for breast implant revision and instead only provides free smooth Allergan implant replacement.

28.     If a customer with a BIOCELL textured implant is diagnosed with BIA-ALCL, under the NATRELLE Confidence Plus Warranty, the customer will be reimbursed for diagnostic fees up to $1,000 and up to $7,500 in surgical fees related to diagnosing and treating BIA-ALCL.

29.     The Confidence Plus Warranty is wholly insufficient as it applies to customers who are diagnosed with BIA-ALCL. The Warranty's reimbursement of $1,000 for diagnostic fees and $7,500 for surgical removal and cancer treatment is entirely too low concerning the expensive and invasive nature of surgery and cancer treatment.

30.     As a result of Allergan's conduct, including refusal to pay for the removal of the recalled BIOCELL implants and the increased risk of developing BIA-ALCL, Plaintiff will be forced to expend substantial amounts of money for surgery, medical monitoring, diagnostic testing, and other medical expenses.

**The Concealment**

31.     Manufacturers selling medical devices in the United States have continuing obligations to comply with medical device reporting requirements.

32.     Consumers and medical personnel rely on the timely and accurate disclosures of information by medical device manufacturers in their decision making.

33.     Breast implants are a Class III medical device.

34.     The FDA requires that a Class III medical device receive premarket approval ("PMA") from the FDA before it can be marketed. A PMA application provides regulatory and scientific information to the FDA demonstrating the safety and effectiveness of the device. PMA is the strictest type of medical device marketing application due to the increased risk associated with Class III medical devices. A PMA application will not be approved if it is incomplete, inaccurate, inconsistent, omits critical information, or is poorly organized. If a Class III medical device fails to receive PMA, it cannot be marketed. The failure to comply with, or withhold information from, a PMA application is cause for withdrawal of the application.

35.     21 C.F.R. § 803.50(a) requires a manufacturer to report to the FDA any information that is reasonably known that may reasonably suggest a device may have caused or contributed to series injury or death within 30 calendar days after learning such information. Information is "reasonably known" if the information can be obtained by contacting "a user facility, importer or other initial reporter;" in the manufacturer's possession; or "can be obtain[ed] by analysis, testing, or other evaluation of the device." 21 C.F.R. § 803.50(b). If information is found, the manufacturer must investigate each reported event and evaluate the cause. *Id*.

36.     Manufacturers selling medical devices in the United States must also provide periodic reports to the FDA, including "[u]npublished reports of data from any clinical

investigations or nonclinical laboratory studies involving the device or related devices and known to or that reasonably could be known to the applicant" and "[r]eports in the scientific literature concerning the device and known to or that reasonably should be known to the applicant." 21 C.F.R. § 814.84.

37.     The FDA publishes adverse events reports concerning findings of products in a database called the Manufacturer and User Facility Device Experience database ("MAUDE"). This database is available to the public.

38.     Allergan's BIOCELL textured implants received premarket approval from the FDA in November 2006. After receiving premarket approval for a Class III device, a manufacturer has a duty to file adverse event reports with the FDA. 21 U.S.C. § 360(a)(1) and 21 C.F.R. § 803.50(a). The primary responsibility for timely and accurately reporting events to the FDA concerning the safety and effectiveness of a medical device is with the manufacturer. These reports are to be submitted to MAUDE.

39.     Accordingly, Allergen is required to file adverse event reports with the FDA in connection with medical devices it produces. Allergen also is obligated to timely communicate any safety information concerning its medical devices to the FDA. Allergen is obligated to monitor all reasonably available information and clinical studies concerning its medical devices.

40.     Allergan has known about the connection between its textured implants and the increased risk of developing BIA-ALCL since at least 2011. During the late 1990s and early 2000s, McGhan (later Inamed) began long-term clinical studies on their silicone breast implants. In 2000, Inamed, began a ten-year study to determine the safety and performance of the McGhan Medical RTV Saline-Filled Breast Implant. In 2006, Allergan purchased Inamed and began several long-term studies to assess the performance of their breast implants, including any health or safety risks,

including cancer risks. Additionally, as a condition of this premarket approval, the FDA required Allergan to conduct six post-approval studies to determine the long-term safety of these implants.

41.    However, Allergan did not disclose the connection between the BIOCELL textured implants and BIA-ALCL to the FDA or the public.

42.    Allergan did not accurately report adverse events each time an injury or malfunction occurred concerning the BIOCELL textured implants.

43.    Until 2017, Allergan buried evidence of ruptures and other injuries with its implants by reporting these as routine events that did not require any public disclosure. Allergan hid these incidents in "Alternative Summary Reports" ("ASR"), which are not required to be reported to MAUDE. The ASR program was intended to exclude severe or unexpected events or injuries. Severe or unexpected events or injuries are required to be reported through MAUDE.

44.    Allergan manipulated the ASR program to hide these serious events from public disclosure.

45.    Allergen used the ASR program to disclose adverse event reports that were required to be disclosed to the public through MAUDE.

46.    Allergen buried serious events in non-public ASR reports, including a possible case of BIA-ALCL.

47.    Further substantiating that severe breast implant events were buried in the ASR program, the FDA began implementing more rigorous reporting requirements in 2017 and there was a dramatic increase in the number of adverse events related to breast implant injuries – from 200 in a single year to 4,567 in 2017 and 8,242 in the first six months of 2018.

48.    The FDA even acknowledges there was a "transparency issue" until recently with the reporting of adverse event reports. The FDA said the increase in adverse event reports reflected

the FDA's implemented change in reporting requirements in 2017 and not "a new public health issue."

49.　　The FDA relies on accurate reporting of adverse events to monitor the safety of medical devices. The general public, medical personnel, and researchers rely on MAUDE to monitor the safety of medical devices.

50.　　Because Allergan deceptively and inaccurately used ASR instead of MAUDE to report adverse incidents, Allergan misled the FDA, medical personnel, researchers, its customers, and the general public. As a result, Allergan's customers were exposed to harm.

51.　　Additionally, Allergan did not report to the FDA adverse events from its required post-market approval studies. These post-market approval studies indicate that the recalled BIOCELL textured implants have caused or contributed to death and/or serious injury by increasing the risk of BIA-ALCL.

52.　　Allergan continuously received new information showing the connection between its textured breast implants and the significantly increased risk of developing BIA-ALCL.

53.　　Allergan failed to comply with the conditions of the PMA application.

54.　　Allergan violated federal law by failing to accurately and promptly report adverse events.

55.　　Allergan also violated applicable state laws, which do not impose duties or requirements different from those imposed by federal law. Therefore, under both state and federal law, Allergan was required to promptly report any information indicative of a serious injury associated with one of its medical devices.

56.　　Because Allergan failed to file adverse event reports, consumers, medical personnel, and the FDA were unable to detect trends in Allergan's products. This deprived the

market and consumers of the information necessary to make an informed decision about whether Allergan's products were safe and effective.

57.    If Allergan had complied with its obligations under federal law, the disclosure of the risk of BIA-ALCL and BIOCELL textured implants would have allowed Plaintiff and her surgeon to make an informed decision whether to use the BIOCELL implants or select another product.

58.    Allergan acted recklessly and with intentional disregard for the safety of Plaintiff and its customers.

59.    In addition to Allergan's failure to comply with reporting requirements, Allegan continued to distribute the textured implants commercially. This distribution was a violation of federal law.

## PLAINTIFF-SPECIFIC ALLEGATIONS

60.    In August 2015, Plaintiff received Allergan manufactured BIOCELL textured implants as part of reconstructive surgery following a diagnosis of breast cancer.

61.    Plaintiff's BIOCELL textured implants were later recalled by the FDA on July 24, 2019.

62.    Plaintiff's BIOCELL textured implants were removed and replaced with an alternative product in September 2019.

63.    Plaintiff would not have had the recalled BIOCELL product implanted had she known prior to her surgery that the BIOCELL textured implants increased her risk of contracting BIA-ALCL, in addition to the costs associated with surgical removal of the implants and medical monitoring.

## CLASS ALLEGATIONS

64.    Plaintiff brings this action on her own behalf and on behalf of the following class pursuant to the Federal Rules of Civil Procedure 23(a), 23(b)(2), 23(b)(3), and/or 23(c)(4). The class consists of the following:

> **Louisiana Class:** All individuals with implanted BIOCELL saline-filled or silicone filled breast implants or tissue expanders that have been recalled by the FDA while in Louisiana.

65.    Excluded from the class are Allergan, their parents, subsidiaries, affiliates, officers, and directors, any entity in which Allergan has a controlling interest, all class members who timely elect to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members. Plaintiff reserves the right to modify, change, or expand the class definition based on the facts learned through discovery and further investigation.

66.    Numerosity: Members of the class are so numerous that individual joinder is impracticable. While the precise number of class members is unknown to Plaintiff at this point, the class includes at least thousands of individuals, and the class members are readily ascertainable and can be identified via Allergan's records.

67.    Typicality: Plaintiff's claims are typical of the claims of the class in that Plaintiff, like all class members, was implanted with recalled BIOCELL products and faced an increased risk of BIA-ALCL.

68.    Adequacy: Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has no interest adverse to the interests of any other class members and is committed to vigorously prosecuting this case. Plaintiff has retained competent counsel experienced in the prosecution of complex class actions involving defective products.

69.    <u>Commonality and Predominance</u>:  There are questions of law and fact common to the class, and the common questions predominate over any questions affecting only individual class members.  Among the questions common to the class are:

- Whether the recalled BIOCELL products significantly increased the risk of developing BIA-ALCL;

- Whether Allergan knew or should have known that the recalled BIOCELL products significantly increase the risk of developing BIA-ALCL;

- Whether Allergan failed to warn consumers regarding the risks of the recalled BIOCELL products;

- Whether Allergan breached express warranties connected with the recalled BIOCELL products;

- Whether Allergan breached implied warranties connected with the recalled BIOCELL products;

- Whether Plaintiff and class members are entitled to damages or other monetary relief, and if so, in what amount.

70.    <u>Superiority</u>: A class action is superior to all other methods available for the fair and efficient adjudication of this controversy.  Because the amount of each individual class member's claim is small relative to the complexity of the litigation, and given Allergan's financial resources, no class member would be likely to pursue legal redress individually for the violations detailed herein.  A class action would also streamline the determination of common claims or issues in this case.  Conversely, individual suits would create the potential for inconsistent or contradictory rulings.  By contrast, a class action presents fewer management difficulties, allows claims to be heard which otherwise go unheard, and allows comprehensive supervision by a single court.

71.     Injunctive Relief:   Class certification is also appropriate under Rule 23(b)(2) because Allergan acted and refused to act on grounds generally applicable to the class, making appropriate final injunctive relief with respect to the class as a whole.

## CAUSES OF ACTION

### COUNT I
### Manufacturing Defect
### Pursuant to La. R.S. 9:2800.55

72.     Plaintiff incorporates the above allegations by reference.

73.     Allergan designed, developed, tested, promoted, marketed, labeled, manufactured, distributed, and/or sold the BIOCELL textured implants that were implanted in Plaintiff.

74.     Allergan had a duty to manufacture, design, formulate, test, package, label, produce, create, make, construct, assemble, market, advertise, promote, distribute, and sell the BIOCELL textured implants with reasonable and due care for the safety and wellbeing of users, including Plaintiff.

75.     The BIOCELL textured implants were defective and were in a condition that made them unreasonably dangerous at the time that the implants left Allergan's possession.

76.     The manufacturing defect rendered all recalled models different from Allergan's intended result or from other identical units of the same product line.   In particular, the recalled BIOCELL implants are not safe, have numerous and serious side effects, and cause severe and permanent injuries.

77.     The BIOCELL textured implants manufactured were not made in accordance with Allergan's specification or performance standards.

78.     At the time the BIOCELL textured implants left Allergan's control, the implants deviated in a material way from the manufacturer's specifications and/or performance standards.

79.    At the time the BIOCELL textured implants left Allergan's control, the implants deviated in a material way from the otherwise identical products manufactured by Allergan.

80.    As a result of Allergan's defective construction or composition of BIOCELL textured implants, Plaintiff suffered damages and harm, including, but not limited to, personal injury, physical pain and suffering, mental anguish, medical expenses, surgical costs of removal of the products, loss of enjoyment of life, lost wages, and ongoing medical monitoring costs.

**COUNT II**
**Design Defect**
**Pursuant to La. R.S. 9:2800.56**

81.    Plaintiff incorporates the above allegations by reference.

82.    Allergan designed, developed, tested, promoted, marketed, labeled, manufactured, distributed, and/or sold the BIOCELL textured implants that were implanted in Plaintiff.

83.    At all times relevant to this action, Allergan had a duty to manufacture, design, formulate, test, package, label, produce, create, make, construct, assemble, market, advertise, promote, distribute, and sell the BIOCELL textured implants with reasonable and due care for the safety and well-being of users, including Plaintiff.

84.    Plaintiff was a foreseeable user of BIOCELL textured implants.

85.    The BIOCELL textured implants are defective in that the design of the implants causes an increased risk of developing BIA-ALCL.

86.    The BIOCELL textured breast implants are defective because their risks and dangers outweigh any purported benefit.

87.    At the time the BIOCELL textured implants left Allergan's control, Allergan knew that the defective condition of the implants made them unreasonably dangerous to users, including Plaintiff.

88.  The BIOCELL textured implants were unreasonably dangerous when used by an ordinary user who used the implants as they were intended to be used, including Plaintiff.

89.  Plaintiff could not, by the exercise of reasonable care, have discovered the defects of the BIOCELL textured implants mentioned herein.

90.  The BIOCELL textured implants were dangerous to an extent beyond which would be contemplated by the ordinary user who purchased and/or used the products, including Plaintiff, because the design of the BIOCELL textured implants causes an increased risk of developing BIA-ALCL.

91.  At the time that the BIOCELL textured implants left Allergan's control, an alternative design for the products existed that was capable of preventing Plaintiff's damages, and the gravity of the damage outweighed the minimal burden on Allergan of adopting such an alternative design.

92.  As a result of Allergan's defective design of the BIOCELL textured breast implants, Plaintiff suffered damages and harm, including, but not limited to, personal injury, physical pain and suffering, mental anguish, medical expenses, surgical costs of removal of the products, loss of enjoyment of life, lost wages, and ongoing medical monitoring costs.

**COUNT III**
**Failure to Warn**
**Pursuant to La. R.S. 9:2800.57**

93.  Plaintiff incorporates the above allegations by reference.

94.  Allergan designed, developed, tested, promoted, marketed, labeled, manufactured, distributed, and/or sold the BIOCELL textured implants that were implanted in Plaintiff.

95.  Allergan had a duty to warn Plaintiff and her physicians about the significantly increased risk of developing BIA-ALCL in connection with the BIOCELL textured implants.

96.    Allergan knew, or should have known in the exercise of ordinary care, that the BIOCELL textured implants were unreasonably dangerous at the time the implants left Allergan's control and were received by Plaintiff, and the unreasonably dangerous nature of the implants was not generally known to the consumer.

97.    Allergan failed to warn Plaintiff and her physicians about the dangers of the BIOCELL textured breast implants, including the greatly increased risk of BIA-ALCL.

98.    Allergan acquired this knowledge from the performance of extensive decades-long clinical studies, reviewing other scientific studies and literature, FDA communications, government reports, and complaints received from consumers, as well as other sources.

99.    Allergan, in violation of federal law, attempted to conceal this information by not making adverse even reports to the FDA.

100.    Allergan, in violation of federal law, filed ASR reports to avoid the public reporting of adverse event reports on MAUDE.

101.    The BIOCELL textured breast implants were defective and unreasonably dangerous at the time the implants left Allergan's possession because the implants did not contain adequate warnings, including the lack of warning concerning the significantly increased risk of developing BIA-ALCL associated with the BIOCELL textured implants.

102.    Plaintiff and ordinary users would not have recognized the potential for the risk of developing BIA-ALCL from the BIOCELL textured implants.

103.    The potential risks of the BIOCELL textured implants presented and continue to present a substantial danger to Plaintiff and ordinary consumers when used in an intended or reasonably foreseeable way.

104.    Allergan failed to adequately warn or instruct concerning the risks of BIOCELL textured implants.

105.    It was foreseeable that Allergan's failure to adequately warn about the risks associated with BIOCELL textured implants would cause irreparable harm to those who had the products implanted, including the types of physical pain and emotional distress incurred by Plaintiff.

106.    As a result of Allergan's failure to adequately warn of the risks associated with BIOCELL textured implants, Plaintiff was harmed as described herein including physical pain and emotional distress.  The lack of sufficient warning was a substantial factor in causing Plaintiff's harm.

107.    Had Plaintiff and her physician been provided the appropriate warnings about the increased risk of BIA-ALCL associated with BIOCELL textured breast implants, Plaintiff and her physician would have been able to make an informed decision about using the product or selecting an alternative product.

108.    As a result of Allergan's failures to adequately warn, Plaintiff suffered damages and harm, including, but not limited to, personal injury, physical pain and suffering, mental anguish, medical expenses, surgical costs of removal of the products, loss of enjoyment of life, lost wages, and ongoing medical monitoring costs.

**COUNT IV**
**Breach of Express Warranty**
**Pursuant to La. R.S. 9:2800.58**

109.    Plaintiff incorporates the above allegations by reference.

110.    Allergan designed, developed, tested, promoted, marketed, labeled, manufactured, distributed, and/or sold the BIOCELL textured implants that were implanted in Plaintiff.

111.    Allergan expressly represented to Plaintiff, other consumers, and the medical community that the BIOCELL textured implants were safe and fit for their intended purposes, were of merchantable quality, did not produce any dangerous side effect, and had been adequately tested.

112.    BIOCELL textured implants do not conform to Allergan's express representations because the products are not safe, have numerous and serious side effects, and cause severe and permanent injuries.

113.    At the time of the making of the express warranties, Allergan knew or should have known of the purpose for which the product was to be used and warranted the same to be, in all respects, fit, safe, and effective and proper for such purpose.

114.    The BIOCELL textured implants were unreasonably dangerous because the implants failed to conform to an express warranty of Allergan as provided by La. R.S. 9:2800.58.

115.    At the time of the making of the express warranties, Allergan knew or should have known that, in fact, said representations and warranties were false, misleading, and untrue in that the subject product was not safe and fit for its intended use and, in fact, produces serious injuries to the user, like Plaintiff.

116.    At all relevant times, BIOCELL textured implants did not perform as safely as an ordinary consumer and the medical community would expect, when used as intended or in a reasonably foreseeable manner.

117.    Plaintiff, other consumers, and the medical community relied upon Allergan's express warranties.

118.    Members of the medical community, including physicians and other healthcare providers, relied upon the representations and warranties of Allergan for use of BIOCELL textured implants.

119.    Allergan breached the aforesaid express warranties, as its product was defective.

120.    As a result of Allergan's breach of express warranty, Plaintiff suffered damages and harm, including, but not limited to, personal injury, physical pain and suffering, mental anguish, medical expenses, surgical costs of removal of the products, loss of enjoyment of life, lost wages, and ongoing medical monitoring costs.

**COUNT V**
**Breach of Implied Warranty of**
**Merchantability and Fitness**

121.    Plaintiff incorporates the above allegations by reference.

122.    Allergan designed, developed, tested, promoted, marketed, labeled, manufactured, distributed, and/or sold the BIOCELL textured implants that were implanted in Plaintiff.

123.    Allergan impliedly represented and warranted to the users of BIOCELL textured implants and their physicians, healthcare providers, and/or the FDA that BIOCELL textured implants were safe and merchantable quality and fit for the ordinary purpose for which said products were used.

124.    At all relevant times, Allergan knew of the use for which BIOCELL textured implants were intended and impliedly warranted the products to be of merchantable quality and safe for such use.

125.    Allergan was aware that consumers, including Plaintiff, would use BIOCELL textured implants in the manner intended.

126.    Plaintiff, her physicians, and the medical community reasonably relied upon the judgment and sensibility of Allergan to sell BIOCELL textured implants only if the products were indeed of merchantable quality and safe for their intended use.

127.    Allergan breached the implied warranty to consumers, including Plaintiff, as BIOCELL textured implants were not of merchantable quality or safe and fit for their intended use.

128.    Consumers, including Plaintiff, and the medical community, reasonably relied upon Allergan's implied warranty for BIOCELL textured implants.

129.    BIOCELL textured implants reached consumers, including Plaintiff, without substantial change in the condition in which the implants were manufactured and sold by Allergan.

130.    The aforementioned representations and warranties were false, misleading, and inaccurate in that BIOCELL textured implants were unsafe, unreasonably dangerous, improper, not of merchantable quality, and defective.

131.    BIOCELL textured implants were placed into the stream of commerce by Allergan in a defective, unsafe, and inherently dangerous condition and the implants were expected to and did reach users without substantial change in the condition in which the implants were sold.

132.    Allergan breached the aforesaid implied warranties, as their BIOCELL textured implants were not fit for their intended purposes or uses.

133.    As a result of Allergan's breach of implied warranty, Plaintiff has suffered damages and harm, including, but not limited to, personal injury, physical pain and suffering, mental anguish, medical expenses, surgical costs of removal of the products, loss of enjoyment of life, lost wages, and ongoing medical monitoring costs.

**COUNT VI**
**Redhibition**

134.    Plaintiff incorporates the above allegations by reference.

135.    Under Louisiana law, the seller warrants the buyer against redhibitory defects, or vices, in the thing sold.  La. C.C. art. 2520.

136.    Allergan sold and promoted BIOCELL textured implants, and BIOCELL textured implants possess a redhibitory defect because the products were not manufactured and marketed in accordance with industry standards and/or were unreasonably dangerous, as described above, which renders the products useless or so inconvenient that it must be presumed that the buyer would not have bought the products had she known of the defect.  Pursuant to La. C.C. art. 2520, Plaintiff is entitled to obtain a rescission of the sale of the products.

137.    BIOCELL textured implants alternatively possess a redhibitory defect because the products were not manufactured and marketed in accordance with industry standard and/or were unreasonably dangerous, as described above, which diminishes the value of the products so that it must be presumed that a buyer would still have bought it but for a lesser price.  In this instance, Plaintiff is entitled to a reduction in the purchase price of the products.

138.    As the manufacturer of the products, under Louisiana law, Allergan is deemed to know that BIOCELL textured implants possessed a redhibitory defect.  La. C.C. art. 2545.

139.    Allergan is liable as a bad faith seller for selling defective products with knowledge of the defects, and thus, is liable to Plaintiff for the price of the products, with interest from the purchase date, as well as reasonable expenses occasioned by the sale of the products, and attorney's fees.

140.    As a result of the redhibitory defects of Allergan's BIOCELL implants, Plaintiff has suffered damages and harm, including, but not limited to, personal injury, physical pain and

suffering, mental anguish, medical expenses, surgical costs of removal of the products, loss of enjoyment of life, lost wages, and ongoing medical monitoring costs.

## COUNT VII
## Breach of Warranty of
## Fitness for Ordinary Use

141.    Plaintiff incorporates the above allegations by reference.

142.    In addition to warranting against redhibitory defects, Allergan warranted that BIOCELL textured implants were reasonably fit for their ordinary and intended use. La. C.C. art. 2524.

143.    BIOCELL textured implants are not safe, have numerous and serious side effects, and cause severe and permanent injuries. As a result, Allergan's products are unfit and inherently dangerous for ordinary use.

144.    As a result of Allergan's breach of warranty of fitness for ordinary use, Plaintiff has suffered damages and harm, including, but not limited to, personal injury, physical pain and suffering, mental anguish, medical expenses, surgical costs of removal of the products, loss of enjoyment of life, lost wages, and ongoing medical monitoring costs.

## COUNT VIII
## Medical Monitoring

145.    Plaintiff incorporates the above allegations by reference.

146.    Medical monitoring is, to a reasonable degree of medical certainty, required to detect BIA-ALCL in Plaintiff.

147.    Medical monitoring is reasonable to properly diagnosis the symptoms of BIA-ALCL. This is particular important because BIA-ALCL is less likely to be fatal if diagnosed and treated early in the disease's progression.

148.    Plaintiff is entitled to have Allergan pay for the costs of ongoing medical monitoring.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all claims in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays, individually and on behalf of the Class, as follows:

i.   Certify the Class under Fed. R. Civ. P. 23(a), (b)(1), (b)(2), (b)(3), and/or (c)(4), as appropriate; appoint Plaintiff as Class Representative; and appoint the undersigned counsel as Class Counsel;

ii.  That process issue according to law;

iii. That Defendants be duly served and cited to appear and answer herein, and that after due proceedings are had, that there be judgment in favor of Plaintiff and against Defendants for the damages set forth below, along with court costs, pre-judgment and post-judgment interest at the legal rate;

iv.  Pain and suffering (past and future);

v.   Medical expenses (past and future);

vi.  Loss of enjoyment of life (past and future);

vii. Mental anguish and distress (past and future);

viii. Physical impairment (past and future);

ix.  Awarding Plaintiff the taxable costs of these proceedings; and

x.   Awarding Plaintiff such other and further relief as may be just and proper.

Dated this 10th day of January 2020.

Respectfully submitted

*/s/ Claire E. Berg*
Irving J. Warshauer (#13252)
Michael J. Ecuyer (#23050)
M. Palmer Lambert (#33228)
Claire E. Berg (#37029)
GAINSBURGH, BENJAMIN, DAVID,
MEUNIER & WARSHAUER L.L.C.
2800 Entergy Centre
1100 Poydras Street
New Orleans, LA 70163
Phone: (504) 521-7643
Fax: (504) 528-9973
iwarshauer@gainsben.com
mecuyer@gainsben.com
cberg@gainsben.com
plambert@gainsben.com


Dawn M. Barrios (#2821)
Zachary L. Wool (#32778)
BARRIOS, KINGSDORF &
CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
barrios@bkc-law.com
wool@bkc-law.com

Attorneys for Plaintiff

**SERVICE LIST:**

**ALLERGAN, INC. f/k/a INAMED CORPORATION**
5 Giralda Farms, Dodge Dr.
Madison, New Jersey 07940

**ALLERGAN USA, INC.**
5 Giralda Farms, Dodge Dr.
Madison, New Jersey 07940

**ALLERGAN plc**
5 Giralda Farms, Dodge Dr.
Madison, New Jersey 07940